**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL KONOWICZ, a/k/a MICHAEL PHILLIPS, and ISARITHM, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> JONATHAN P. CARR, SEVERE NJ WEATHER, LLC, and WEATHER NJ, LLC, <br><br> Defendants. | Civil Action No. 15-6913 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** <br> **FILED UNDER SEAL** |

**SHIPP, District Judge**

This matter comes before the Court upon Counterclaim Defendant Michael Konowicz's ("Konowicz" or "Counterclaim Defendant") Motion for Summary Judgment. (ECF No. 92.) Counterclaim Plaintiffs Jonathan P. Carr, Weather NJ, LLC, and Severe NJ Weather LLC (collectively, "Carr" or "Counterclaim Plaintiff") opposed. (ECF No. 98.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Konowicz's Motion for Summary Judgment is granted.

**I.   PROCEDURAL BACKGROUND**

Konowicz initiated this suit on August 16, 2015, asserting three causes of action against Carr. (Compl. ¶¶ 31-54, ECF No. 1.) On November 15, 2015, Carr answered and asserted a single counterclaim of defamation against Konowicz. (*See generally* Answer & Countercl., ECF No. 9.)

1

On June 30, 2016, the Court granted Carr's Motion for Judgment on the Pleadings (ECF No. 12) and denied Konowicz's Cross-Motion to Amend (Order, ECF No. 16).

On October 10, 2016, Konowicz filed an Amended Complaint asserting the same three causes of action. (*See* Am. Compl., ECF No. 28.) On November 7, 2016, Carr answered and asserted the same single counterclaim of defamation against Konowicz. (*See* Answer & Countercl. ("Countercl."), ECF No. 30.)

The parties cross-moved for summary judgment, and on October 12, 2018, the Court terminated both parties' motions because of the parties' mutual failure to comply with Local Civil Rule 56.1 and Konowicz's failure to comply with Local Civil Rule 5.3. (Mem. Op., ECF No. 72.) On October 22, 2018, the parties re-filed their motions. (*See* Mots. for Summ. J., ECF Nos. 75, 78.) Carr's motion addressed the procedural and substantive deficiencies identified in the Court's October 12, 2018 Memorandum Opinion.[1] Konowicz's motion papers, however, again failed to comply with Local Civil Rule 5.3. After several more attempts at filing his motion papers (*see* ECF Nos. 88, 96), on January 11, 2019, Konowicz appropriately filed the instant Motion for Summary Judgment. (Countercl. Def.'s Moving Br., ECF No. 97.) On January 15, 2019, Carr opposed. (Countercl. Pl.'s Opp'n Br., ECF No. 98.) Konowicz did not submit a reply brief.

## II.  FACTUAL BACKGROUND

The Court provided an extensive factual summary in its Memorandum Opinion related to Carr's summary judgment motion. (*See* Carr MSJ Op.) Thus, the Court recites only the facts necessary to decide the instant motion.

The instant matter arises from several statements Konowicz made about Carr on Facebook. (*See* Countercl. ¶ 14.) Carr is an "amateur weather enthusiast who operates on the Internet and

---

[1] On May 31, 2019, the Court granted Carr's Motion for Summary Judgment. (Mem. Op. ("Carr MSJ Opinion."), ECF No. 99.)

2

social media through . . . Weather NJ, LLC and [previously] through . . . Severe NJ Weather, LLC. (*Id.* ¶ 1.) Carr admits that he has over 225,000 followers on Facebook and has made over twenty radio appearances.[2] (*Compare* KSUMF ¶ 8, *with* CRSDF ¶ 8.)

On June 23, 2015, one of Carr's online followers sent Carr a photo of what the sender thought was a tornado. (CSUMF ¶ 3.) Carr posted the same photo on Facebook. (*Id.*) Konowicz took the photo and posted it on his Weatherboy Weather Facebook page with a red line through it, and included a statement that the National Weather Service ("NWS") was still investigating if what was depicted in the photo was a tornado. (*Id.* ¶ 6; Countercl., Ex. H. ("NWS Post"), ECF No. 30-2.)[3] Konowicz, as Weatherboy Weather, then stated "We're glad to see the [NWS] take a stand against them." (KSUMF ¶ 6; June 23 Post.) He also stated "the [NWS] was very vocal in calling out [Carr] for spreading harmful misinformation." (June 23 Post.) Carr alleges that these two statements—(1) that the NWS had "called out" Carr for "spreading harmful misinformation"; and (2) that the NWS had "taken a stand" against Carr—are defamatory. (*See* Countercl. ¶¶ 14, 18.)

---

[2] The Court's factual summary draws primarily from Konowicz's Statement of Material Facts Not in Dispute. (Countercl. Def.'s Statement of Material Facts Not in Dispute ("KSUMF"), ECF No. 97-1.) Carr submitted a response to the KSUMF. (*See* Countercl. Pl.'s Response to KSUMF ("CRSDF"), ECF No. 98-1.) Carr also submitted a Supplemental Statement of Disputed Material Facts. (Def.'s Supp. Statement of Disputed Material Facts ("CSUMF"), ECF No. 98-1.) Despite describing the statements as disputed, Carr cites to the record submitted in conjunction with his Motion for Summary Judgment, in which he asserted that the same facts were undisputed. (*Compare* CSUMF ¶¶ 1-7, *with* Def.'s Statement of Undisputed Material Facts ¶¶ 89-94, 96, ECF No. 76-5.) The Court, accordingly, assumes that Carr intended the CSUMF to include undisputed facts. Additionally, because Konowicz did not submit a response to the CSUMF, the Court deems the CSUMF as undisputed. *Easterling v. U.S. Dep't of Educ.*, No. 15-1367, 2016 WL 8674610, at *4 (D.N.J. Dec. 23, 2016) ("Local Civil Rule 56.1(a) deems a . . . statement of material facts to be undisputed where the opposing party does not respond to it or file a counterstatement.")

[3] In support of his Motion for Summary Judgment, Carr submitted a screenshot of the NWS Post and screenshot of comments on the same post. (*See* Def.'s Mot. for Summ. J., Exs. 24, 25 ("June 23 Post"), ECF No. 76-3.) For the parties convenience, the Court refers to both the NWS Post and the subsequent comments as the "June 23 Post".

3

Konowicz asserts that the basis for his statement that the NWS had "called out" Carr was a series of tweets made by Szatkowski.[4] (KSUMF ¶ 12.)[5] In separate tweets, Szatkowski stated:

> Sorry, but the sun is out. Worst of storm has moved on. Why would that be a tornado?
>
> \* \* \*
>
> Well, I just think it's misrepresented as a tornado. But others can have different opinions.
>
> \* \* \*
>
> To be [a] confirmed tornado, a damage survey must be done. It must have a start and end point. Maximum wind speed is evaluated.
>
> \* \* \*
>
> For that ever to be more than a pretty picture of an interesting cloud, that is what must happen.
>
> \* \* \*
>
> If its not important that it be confirmed as a tornado, [then] call it what you wish. I simply won't be able to concur.

(*Compare id.* ¶ 10, *with* CRSDF ¶ 10, *and* Cert. of John A. O'Connell, Ex. C, ECF No. 97-2.)

## III.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact—a fact "that might affect the outcome of the suit under governing law,"—raises a "genuine" dispute if "a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W.*

---

[4] Konowicz states that Szatkowski worked for the NWS, and Carr testified that Szatkowski previously worked for the NWS. (KSUMF ¶ 11; Cert. of John A. O'Connell, Ex. B, Dep. Tr. of Jonathan P. Carr 31:15-23, ECF No. 97-2.)

[5] Carr denies this paragraph of Konowicz's Statement of Facts on the grounds that it does not cite to the record in accordance with Local Civil Rule 56.1. Carr is correct that this paragraph does not contain a citation to the record in violation of the Local Rules. Konowicz's Certification, however, provides that Konowicz relied upon the series of tweets by Szatkowski when he made the statement that Carr was called out. (Cert. of Michael Konowicz ¶ 5, ECF No. 97-2.) The Court, accordingly, accepts as true Konowicz's statement that Szatkowski's tweets were the basis of his statements.

*Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248). To determine whether a genuine dispute of material fact exists, the Court must consider all facts and reasonable inferences in the light most favorable to the non-movant. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249.

The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Thereafter, the nonmoving party creates a "genuine [dispute] of material fact if it has provided sufficient evidence to allow a jury to find [for him] at trial." *Becton Dickinson & Co. v. Wolckenhauer*, 215 F.3d 340, 343 (3d Cir. 2000)

"[C]ourts have recognized that the perpetuation of meritless actions, with their attendant costs, chills the exercise of free speech about public affairs." *Berkery v. Estate of Stuart*, 988 A.2d 1201, 1209 (N.J. Super. Ct. App. Div. 2010). Accordingly, "trial courts should not hesitate to use summary judgment procedures where appropriate to bring such actions to a speedy end." *Id.* "On the other hand, the actual-malice standard entails a subjective analysis of the defendant's state of mind[,]" and "the issue of a defendant's state of mind in a defamation action 'does not readily lend itself to summary disposition.'" *Id.* (quoting *Maressa v. N.J. Monthly*, 445 A.2d 376, 387 n.10 (N.J. 1982)). "Courts should carefully examine the circumstances surrounding publication of defamatory allegations of fact to determine whether the issue of actual malice should go to the jury." *Id.*

## IV. DISCUSSION

Konowicz advances three principal arguments in support of his Motion for Summary Judgment: (1) that Carr has no damages because he cannot demonstrate any pecuniary loss; (2) that Carr cannot demonstrate actual malice as required by his position as a limited public figure; and

5

(3) that the truth of Konowicz's statements serve as a defense. (Countercl. Def.'s Moving Br.7-9, ECF No. 97.) On the first point, Konowicz states that under New Jersey law a "plaintiff suing on an issue of public concern must show damages." (*Id*. at 8 (citing *Rocci v. Ecole Secondaire Macdonald-Cartier*, 755 A.2d 583, 587 (N.J. 2000)).) Konowicz argues that "Carr's admission that he suffered no pecuniary damages dooms his counterclaim." (*Id.*) On the second point, Konowicz argues that Carr is a limited public figure because of his radio appearances and "his weather posts [which] reach more than 100,000 people." (*Id.*) Konowicz insists that Carr cannot establish the requisite actual malice because Konowicz's statements were "mere opinion or hyperbole." (*Id.* at 8-9 (citing *LoBiondo v. Schwartz*, 733 A.2d 516, 518 (N.J. Super. Ct. App. Div. 1999)).) On the final point, Konowicz argues that given Szatkowski's tweets, "it was perfectly legitimate—true, in fact—for Konowicz to say that Carr had been 'called out' by the" NWS. (*Id.* at 10.)

Carr opposes, advancing two primary arguments. (Countercl. Pl.'s Opp'n Br. 4-10.) First, Carr argues that "the evidence shows that [Konowicz] fabricated his claims that Mr. Carr had been 'called out' and 'reprimanded' by the [NWS] for 'spreading harmful information.'" (*Id*. at 6.) Carr relies on communications between Szatkwoski and Carr to establish that Szatkwoski's tweets were not a "reprimand". (*Id*. at 7-8.) Carr insists that the fabricated nature of Konowicz's claims shows that there is a disputed issue of material fact regarding actual malice, and the grant of summary judgment is inappropriate. (*Id.* at 8.) Carr's second argument is that if actual malice is established, the doctrine of presumed damages applies, and therefore the damages element is waived, and the award of damages becomes an issue for the jury. (*Id.* at 9-10.)

A defamation claim has three elements: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher. *G.D. v. Kenny*, 15 A.3d 300, 310

6

(N.J. 2011) (quoting *DeAngelis v. Hill*, 847 A.2d 1261, 1267-68 (N.J. 2004)). In cases where the plaintiff is a public figure, the plaintiff also must establish that the defendant made the statements at issue with "actual malice". *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). "Actual malice has 'nothing to do with hostility or ill will; rather it concerns [a] publisher's state of knowledge of the falsity of what he [or she] published . . . .'" *DeAngelis*, 847 A.2d at 1270 (N.J. 2004) (quoting *Lawrence v. Bauer Pub. & Printing Ltd.*, 446 A.2d 469, 477 (N.J. 1982)).

"To determine if a statement has a defamatory meaning, a court must consider three factors: (1) the content, (2) the verifiability, and (3) the context of the challenged statement." *NuWave Inv. Corp. v. Hyman Beck & Co.*, 75 A.3d 1241, 1249 (N.J. Super. Ct. App. Div. 2013), *aff'd*, 114 A.3d 738 (N.J. 2015) (internal quotations and citation omitted). "Whether the meaning of a statement is susceptible of a defamatory meaning is a question of law for the court." *Ward v. Zelikovsky*, 643 A.2d 972, 978 (N.J. 1994).

> Opinions "are generally not capable of proof of truth or falsity because they reflect a person's state of mind," and as such are usually not actionable as defamation. For example, stating a person "was dishonest and lacking in integrity" is an opinion that is generally not subject to verification. However, a "defamatory opinion statement" is actionable when it implies "reasonably specific assertions" of "underlying objective facts that are false."

*NuWave Inv. Corp.*, 75 A.3d at 1250.

"Another component of a statement's defamatory nature—and thus an element of a prima facie case—is that [the] plaintiff must have been harmed by the alleged defamation . . . . Indeed, to survive a defendant's motion for summary judgment, a plaintiff must raise a sufficient question of fact as to actual injury to his or her reputation." *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 751 A.2d 1066, 1071 (N.J. Super. Ct. App. Div. 2000). "Damages which may be recovered in an action for defamation are: (1) compensatory or actual, which may be either (a) general or (b)

special; (2) punitive or exemplary; and (3) nominal." *W.J.A. v. D.A.*, 43 A.3d 1148, 1154 (N.J. 2012) (quoting *Prosser and Keeton on Torts* § 116A at 842 (5th ed. 1984)).

> Contained within the notion of actual damages is the doctrine of presumed damages—the losses "which are normal and usual and are to be anticipated when a person's reputation is impaired." Presumed damages are a procedural device which permits a plaintiff to obtain a damage award without proving actual harm to his reputation. . . . Presumed damages apply in libel cases. In contrast, slander cases generally require proof of special damage—an economic or pecuniary loss. However, if the slander is *per se* (e.g., accusation of a crime, a loathsome disease, misfeasance in business, or serious sexual misconduct . . . the requirement of proving special or economic damage in a slander case drops away. . . . In that case, slander *per se*, like libel, permits the jury to consider presumed damages.

*Id.* "[T]he doctrine of presumed damages permits [a party] to survive a motion for summary judgment and to obtain nominal damages, thus vindicating his [or her] good name." *Id.* at 1150.

"Once a plaintiff establishes that there was a defamatory statement [and damages], he or she then must prove . . . that the defendant was at fault in publishing the [defamatory statement]." *McLaughlin*, 751 A.2d at 1072. "If . . . the plaintiff is a public figure, [the plaintiff must] prove that the defendant was motivated by 'actual malice—that the defendant either knew the statement was false or recklessly disregarded its falsity.'" *Id.*

Here, the Court finds that Konowicz is entitled to summary judgment because Konowicz's statements are not defamatory in nature and because Carr cannot meet his burden of establishing that the statements were made with actual malice. The Court discusses each of these issues in turn.[6]

---

[6] The New Jersey Supreme Court has held that the presumed damages doctrine remains viable and a plaintiff can recover nominal damages, even in the absence of actual damages. *See W.J.A.*, 43 A.3d at 1154. As a result, Konowicz's argument regarding Carr's failure to establish a pecuniary loss is unpersuasive as it is contrary to the current state of New Jersey law and the Court will not consider it further.

8

### A. Konowicz's Statements Were Not Defamatory

"A statement's content must be judged not by its literal meaning but by its objective meaning to a reasonable person of ordinary intelligence." *McLaughlin*, 751 A.2d at 1071. "A statement's verifiability refers to whether it can be proved true or false." *Lynch v. N.J. Educ. Ass'n*, 735 A.2d 1129, 1137 (N.J. 1999).

> Loose, figurative or hyperbolic language is not likely to imply specific facts, and thus is not likely to be deemed actionable. A pure opinion is one that is based on stated facts or facts that are known to the parties or assumed by them to exist . . . ; a "mixed opinion" is one "not based on facts that are stated or assumed by the parties to exist" . . . . If a statement could be construed as either fact or opinion, a defendant should not be held liable. An interpretation favoring a finding of "fact" would tend to impose a chilling effect on speech.

*Id.* (internal citations and certain quotation marks omitted.)

The Court finds that Konowicz's statements were not defamatory. On the one hand, determining whether the NWS had "called out" Carr and "taken a stand" against Carr appears to be a verifiable fact which the Court can whether it is true or false. On the other hand, "the context of a statement can affect significantly its fair and natural meaning." *Id.* Thus, the fact that the statements were made in the comments section of a Facebook post and by Konowicz about Carr—two individuals who had engaged in a years' long social media "war of words"[7]—suggests that Konowicz's statements were not defamatory. *See Wilson v. Grant*, 687 A.2d 1009, 1013 (N.J. Super. Ct. App. Div. 1996) (holding that it was not actionable when a radio host described an adversary as a "sick, no good, pot smoking, wife beating skunk"). Moreover, Konowicz's

---

[7] The Court's recitation of facts in this Memorandum Opinion does not fully document the online interactions between Konowicz and Carr. The Carr MSJ Opinion, however, sets forth the history of the parties' online interactions in detail. The Court, therefore, does not repeat it here. (*See* Carr MSJ Op.) The record the parties submitted in relation to Carr's Motion for Summary Judgment also details the parties' interactions.

9

statement could be either a statement of fact or a hyperbolic expression of his opinion of NWS's actions toward Carr.[8] Because this ambiguity exists and allowing Carr to maintain this suit could have a chilling effect on speech, the Court finds that Konowicz's statements are not defamatory.

> **B.     Carr Has Not Raised a Genuine Dispute of Material Fact Regarding Actual Malice**

The Supreme Court has identified two types of public figures: (1) general public figures and (2) public figures for a limited purpose. A general-purpose public figure is defined as someone "who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures . . . ." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). "Some [people] occupy positions of such persuasive power and influence that they are deemed public figures for all purposes." *Id.* at 345. Others, however, are only public figures by virtue of the limited controversy in which they find themselves. *Id.*

The New Jersey Supreme Court interpreted the Supreme Court's holding regarding limited purpose public figures as follows:

> *Gertz* refrains from establishing specific criteria against which a plaintiff's status can be measured to determine whether or not he [or she] is a public figure. Rather in instances where the plaintiff is not a public figure for all purposes, *Gertz* calls for a case-by-case examination "looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." Important factors that led the Court to conclude that the *Gertz* plaintiff was not a public figure included [the] plaintiff's lack of any calculated relationship with the press and the fact that he neither "thrust himself into the vortex of this public issue, nor

---

[8] The Court notes that Carr appears to argue that Konowicz's use of the word "reprimand" is actionable. (Def.'s Opp'n Br. 6-8.) A close read of the Facebook post, however, shows that another user requested that Konowicz post the link to what that user described as a "reprimand." (June 23 Post.) Konowicz declined to do so and used the term "reprimand" in response. (*Id.*) Thus, Konowicz's statement regarding a "reprimand" could be Konowicz claiming that the NWS reprimanded Carr, or Konowicz simply parroting the term the other user employed to describe Konowicz's prior post. Even if the Court were to adopt the former view, the Court, for the reasons set forth above, would conclude that the statement is not actionable.

10

> [engaged] the public's attention in an attempt to influence its outcome."

*Lawrence*, 446 A.2d at 475 (quoting *Gertz*, 418 U.S. at 352) (internal citations omitted); *accord MacKay v. CSK Pub. Co.*, 693 A.2d 546, 554 (N.J. Super. Ct. App. Div. 1997).

Here, the Court finds that Carr is a limited purpose public figure. Carr has over 250,000 Facebook followers, has appeared on the radio over 20 times, and operates a website dedicated to weather reporting. (CRSDF ¶ 8.) There is no doubt that Carr seeks public attention for his weather-related pursuits.

### C. Carr Has Not Raised a Genuine Dispute of Material Fact Regarding Actual Malice

In *New York Times v. Sullivan*, the Supreme Court held that in instances where the plaintiff is a "public figure," the plaintiff must establish that the defendant made the statements at issue with actual malice. 376 U.S. 254, 279-80 (1964). In *Saint Amant v. Thompson*, the Supreme Court analyzed the actual malice standard and held that a defendant who made statements about his opponent's character in a political race was not liable for defamation, despite the defendant's failure to investigate his statements and lack of consideration of the consequences for the plaintiff. 390 U.S. 727, 732-33 (1968).

Actual malice requires evidence that the defendant entertained serious doubts about the veracity of his statements. *Id.* at 731. The actual malice standard does not ask whether a reasonably prudent person would have published the statements in similar circumstances. *Id.* "Rather, the focus of the 'actual malice' inquiry is on a defendant's attitude toward the truth or falsity of the publication, on his [or her] subjective awareness of its probable falsity, and his [or her] actual doubts as to its accuracy." *Costello v. Ocean Cty. Observer*, 643 A.2d 1012, 1024 (N.J. 1994). New Jersey imposes a heightened standard in that the plaintiff must establish actual malice by clear and convincing evidence. *Id.* at 1022.

The Supreme Court clarified the actual malice standard in *Garrison v. Louisiana*, holding that reckless disregard in the context of actual malice requires the statements be made with a "high degree of awareness of their probable falsity . . . ." 379 U.S. 64, 74 (1964). Public figures, moreover, are "permitted to recover in libel only when they could prove that the publication involved was deliberately falsified, or published recklessly despite the publisher's awareness of probable falsity." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 153 (1967).

A "bald assertion by the publisher that he [or she] believes in the truth of the statement may not be sufficient" to protect the publisher from liability for publication of the statement. *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 516 A.2d 220, 232-33 (N.J. 1986) (citing *St. Amant*, 390 U.S. at 732). "Notwithstanding a publisher's denial that it had serious doubts about the truthfulness of the statement, other facts might support an inference that the publisher harbored such doubts." *Id.* at 233. "Sufficient evidence [for a finding in the plaintiff's favor] does not exist . . . when the only evidence offered is that the defendants 'should have known the articles were false, or they at least should have doubted their accuracy.'" *Costello*, 643 A.2d at 1023 (quoting *Lawrence*, 446 A.2d at 477).

Here, Carr has failed to raise a genuine dispute of fact regarding whether Konowicz made the statements at issue with actual malice. Carr analogizes the instant matter to *Carson v. Allied News Co.*, 529 F.2d 206 (7th Cir. 1976), as support for his argument that Konowicz fabricated his claims that the NWS "called out" or "reprimanded" Carr for "spreading harmful misinformation." (Countercl. Pl.'s Opp'n Br. 5-8.) Carr's reliance on *Carson* is misplaced.

In *Carson*, John Carson and Joanna Holland brought suit for the publication of an April 9, 1972 article with the headline "[NBC] Pays For Carson's Love Life! Move To Hollywood Is Just So Johnny Can Be Near Miss Holland." *Carson*, 529 F.2d at 208. The gist of the article was that Carson's Tonight Show was moving from New York City to Hollywood because Holland lived in

12

Hollywood, California. *Carson*, 529 F.2d at 211. Holland, however, did not live in California. *Id.*

The article also emphasized that (1) Holland was the cause of the break-up of Carson's previous marriage, and (2) there was a struggle between Carson and NBC executives because Carson wanted to move the show and the executives were resisting. *Id.* at 212. Based on the record before it, the Seventh Circuit found that nothing in the record supported "the published statements alleging or implying that Holland broke up Carson's prior marriage." *Id.* The Seventh Circuit concluded that those statements were "a sheer fabrication by the defendants[,]" which the Supreme Court has described as an express example of actual malice. *Id.*

In relation to the supposed struggle between Carson and the executives, Carson testified that he had never personally discussed moving the show to Hollywood with the executives. *Id.* Nevertheless, the article included quotes purportedly from the executives on the same subject. *Id.* The Seventh Circuit stated that it "must be a canon that a journalist does not invent quotations and attribute them to [an] actual person[,]" and because the article's writer had done this, there was evidence of a reckless disregard for the truth. *Id.* at 213.

The Seventh Circuit held that Carson and Holland had established their entitlement to have a jury determine whether actual malice existed. *Id.* The Seventh Circuit stated that based on the record, the defendants "necessarily entertained serious doubts as to the truth of the statements [in the article] and had a high degree of awareness of their probable falsity." *Id.*

Here, the facts are entirely distinguishable from the facts of *Carson* and the defendants' conduct in that matter. Whether the NWS, through Szatkowski, "called out" or "reprimanded" Carr is debatable depending on the reader's interpretation of Szatkowski's statements. More importantly, a call out or reprimand, because of the imprecision of the terms particularly when used online, is not an objective fact that can be readily determined. In contrast, the pertinent facts

13

in *Carson* were readily determinable. The Seventh Circuit determined that (1) Holland did not live in California; (2) the relationship between Holland and Carson began after Carson's prior marriage ended, and (3) that alleged conversations between Carson and NBC executives did not occur. Unlike the defendants in *Carson*, Konowicz did not fabricate quotes and attribute them to individuals who existed but did not provide the statements. At worst, Konowicz's statements were hyperbolic descriptions of Szatkowski's statements. Carr's reliance on *Carson*, thus, is unpersuasive.

The record before the Court does not establish that Konowicz made the statements with a reckless disregard for the truth or knowledge of their probable falsity. The record shows that Szatkowski made certain statements in response to Carr posting a picture of a possible tornado. Konowicz interpreted those statements, perhaps through the lens of his ongoing dispute with Carr, and then made certain statements of his own. The record before the Court lacks any evidence showing, or even suggesting, that Konowicz ever entertained a serious doubt regarding the accuracy of his statements or that his attitude towards the truth should subject him to liability for defamation. Carr argues that his conversations with Szatkowski proves that the NWS did not call out or reprimand Carr. This argument is effectively that Konowicz should have known that his statements were false or at least doubted their accuracy. Carr, however, cannot meet his burden based on evidence of this type. *See Costello*, 643 A.2d at 1023. The Court, accordingly, concludes that Carr has failed to establish a genuine dispute of material fact regarding whether Konowicz made the statements with actual malice; nor has he established an entitlement to have the facts put before a jury.

## V.     **CONCLUSION**

For the reasons set forth above, the Court finds that the statements at issue are not actionable as defamatory statements. The Court also finds that Carr has failed to raise a genuine

dispute of material fact regarding whether Konowicz made the statements with actual malice. Konowicz, accordingly, is entitled to summary judgment. An order consistent with this Memorandum Opinion will be entered.

s/Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**DATED:** July 31st, 2019

15